UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JANET A.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

Defendant.

Case No.:  21-cv-00227-DEB

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**[DKT. NOS. 17, 18]**

## I.    INTRODUCTION

Plaintiff Janet A. seeks review of the Commissioner of Social Security's denial of disability benefits. Dkt. No. 1. The parties filed Cross-Motions for Summary Judgment and Plaintiff filed a Reply. Dkt. Nos. 17, 18, 21.

For the reasons discussed below, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

/ /

/ /

/ /

/ /

/ /

1

## II.     PROCEDURAL BACKGROUND

On April 17, 2018, Plaintiff applied for disability insurance benefits claiming disability beginning August 1, 2016. AR 15, 236.[1] The Social Security Administration denied Plaintiff's claim and denied reconsideration. AR 94–106, 108–20. Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held.  AR 32, 64, 138–39. Following the hearing, the ALJ issued a decision finding Plaintiff not disabled. AR 12–27. The Appeals Counsel denied Plaintiff's request for review. AR 1–6. Plaintiff then filed this case. Dkt. No. 1.

## III.     SUMMARY OF ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since August 1, 2016." AR 18.

At step two, the ALJ found the following severe medically determinable impairments: incipient degenerative disc disease, incipient degenerative joint disease, and ulcerative proctitis. AR 18–19. The ALJ found Plaintiff's hypertension, left knee pain, hand pain, foot pain, mild leukopenia, depressive disorder, and anxiety disorder were not severe. AR 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled those in the Commissioner's Listing of Impairments. AR 20.

Before proceeding to step four, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform medium work except:

---

[1]     "AR" refers to the Administrative Record lodged on October 13, 2021. Dkt. No. 10. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

1
2
3
4

> the claimant can frequently climb ramps and stairs; occasionally climb ladders or scaffolding; but never climb ropes. She can frequently balance, stoop, kneel, crouch and crawl. The claimant is limited to no more than frequent work at unprotected heights, around moving mechanical parts or operating a motor vehicle.

5    AR 20.

6         At step four, the ALJ found Plaintiff could perform her past relevant work. AR 26.
7    The ALJ concluded Plaintiff was not disabled and did not proceed to step five. *Id.*

8    **IV.    STANDARD OF REVIEW**

9         The Court reviews the ALJ's decision to determine whether the ALJ applied the
10   proper legal standards and whether the decision is supported by substantial evidence.
11   42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).
12   Substantial evidence is "such relevant evidence as a reasonable mind might accept as
13   adequate to support a conclusion. *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012)
14   (quotation omitted). It is "more than a mere scintilla but, less than a preponderance . . . ."
15   *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*,
16   504 F.3d 1028, 1035 (9th Cir. 2007)).

17        The Court "must consider the entire record as a whole and may not affirm simply by
18   isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154,
19   1160 (9th Cir. 2014) (internal quotation omitted). "[I]f evidence exists to support more than
20   one rational interpretation, [the Court] must defer to the Commissioner's decision." *Batson
21   v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

22   **V.    DISCUSSION**

23        Plaintiff contends the ALJ committed three errors: (1) "fail[ing] to identify any
24   specific, legitimate reason for rejecting . . . three concurring [medical] opinions";
25   (2) excluding Plaintiff's mental limitations "in formulating the RFC"; and (3) "discounting
26   Plaintiff's alleged pain and symptom[ ]" testimony. Dkt. No. 17 at 16, 17, 19. The Court
27   addresses each of these claimed errors in turn.

28

1

### A. Medical Opinions

2    Plaintiff first challenges the ALJ's rejection of an examining physical therapist and

3    two treating physicians' opinions. Dkt. No. 17 at 14.

4    On July 8, 2019, physical therapist Alan Saluta performed independent functional

5    testing on Plaintiff. AR 22, 84, 1110. Saluta opined Plaintiff can lift up to 11 pounds from

6    the floor to her waist and 8 pounds from her waist to shoulders; carry no more than

7    8 pounds; push or pull up to 42 pounds; walk for 30 minutes at 2 miles per hour; balance;

8    reach; climb; crouch; stoop; kneel; and seize, hold, and grasp objects with each hand.

9    AR 1110–11. Further, he opined Plaintiff cannot sit or stand for 30 minutes or crawl 6 feet.

10   AR 1111. Saluta concluded Plaintiff "present[ed] with marked postural deviations,

11   significant soft tissue restrictions, and joint hypomobility that contributes to compensatory

12   dysfunctions." AR 1112.

13   In March 2020, Drs. Mitchell and Yee endorsed Saluta's functional capacity

14   assessment without making additional findings. AR 1612, 1702.[2]

15   The ALJ determined Saluta was not "an approved medical source" and found his

16   opinions unpersuasive. AR 24–25. Additionally, the ALJ found Drs. Mitchell and Yee's

17   opinions "not persuasive as independent medical opinions" because the doctors based them

18   on Saluta's testing.  AR 24. The ALJ found all three assessments "overly-restrictive" and

19   inconsistent with "the record as a whole" (i.e., "the objective evidence regularly notes

20   [Plaintiff] has normal" findings) and Plaintiff's "activities of daily living." *Id*. The ALJ

21

22

23

24   [2]    Specifically, Dr. Mitchell opined: "I have received the functional capacity study.
     Based on that review, including notes from [Plaintiff] and various specialists, I believed
25   this study accurately reflects her capacity." AR 1612. And Dr. Stuart opined: "I reviewed
     the function capacity evaluation and agree with the assessment. I would recommend light
26   duty given her pain complaints / function, diagnosis of chronic back pain with lumbar disc
     disorder – lifting no more than 11 lbs (per functional evaluation), limiting prolonged
27   periods of sitting no more than 20–30 minutes or standing at one time. No ladders. She
     may bend at the waist and torso occasionally." AR 1702.
28

further found the opinions unpersuasive because they were "almost entirely dependent on [Plaintiff's] own subjective reports and subjective performance on one occasion." *Id*.

Plaintiff claims the ALJ erred by setting out only "vague" reasons for his rejection. Dkt. No. 17 at 13. Plaintiff also claims Saluta's "opinion was well-supported by his objective examination and functional testing" and Drs. Mitchell's and Yee's opinions were "independently" based on "their knowledge of Plaintiff's impairments, symptoms, and pain." *Id.* at 14.

### i. *Legal Standard*

Plaintiff filed her claim after March 27, 2017; therefore, the 2017 amendments governing medical opinions contained in 20 C.F.R. § 404.1520c apply. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Under the 2017 amendments, the Social Security Administration ("SSA") "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources." 20 C.F.R. § 404.1520c(a).

The 2017 amendments require evaluation of the persuasiveness of medical opinions according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors, such as the medical source's familiarity with other evidence and the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). In assessing medical opinions, ALJs must explain how they "considered the supportability and consistency factors" and "may, but are not required to, explain how [they] considered the [other] factors . . . as appropriate." *Id.* § 404.1520c(b)(2).

Under the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [the source's] medical opinion(s) . . . the more persuasive the medical opinions will be." *Id.* § 404.1520c(c)(1).

"Consistency" is the extent to which an opinion is consistent "with the evidence from other medical sources and nonmedical sources." *Id.* § 404.1520c(c)(2).

21-cv-00227-DEB

1
2
3

"For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

4
5
6
7
8
9
10

The SSA "require[s] objective medical evidence . . . from an [acceptable medical source ("AMS")] to establish that an individual has a[ ] [medically determinable impairment] at step 2 of the sequential evaluation process." SSA POMS DI 22505.003. "Once [the SSA] establish[es] that a claimant has a[ ] [medically determinable impairment] based on objective medical evidence from an AMS, [the SSA] use[s] all evidence from all sources for all other findings in the sequential evaluation process, including . . . [m]edical sources who are not AMSs." *Id.*

11
12
13
14
15

"Although [the SSA] will not recognize [physical therapists] as AMSs [under the 2017 amendments], [it] will continue to consider evidence from these medical sources under the[ ] final rules when [it] evaluate[s] the severity of an individual's impairment(s) and its effect on the individual." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pt. 404).

16
17

Applying these standards, the Court finds the ALJ properly discounted the three medical opinions at issue.

18

### ii.   Physical Therapist Alan Saluta's Opinions

19
20
21

Plaintiff argues the ALJ's "general assertion that [Saluta's] opinion is inconsistent with normal findings . . . is insufficiently vague."  Dkt. No. 17 at 14. The Court, however, can meaningfully review the ALJ's conclusion.

22
23
24
25
26
27

In rejecting Saluta's opinion, the ALJ stated the "objective evidence regularly notes [Plaintiff] has normal strength, normal sensation, normal gait and station, with normal exams of [Plaintiff's] shoulders, hips, wrist and knees." AR 24 (citing AR 609–81, 1113–1234, and 1235–1246). Indeed, Kaiser progress notes from examinations of Plaintiff on October 8, 2018 through July 29, 2019, which the ALJ cited, reflect Plaintiff presented with a normal range of motion, gait, and station. AR 614, 629, 634, 961, 1147.

28

21-cv-00227-DEB

The ALJ also cited a consultative examiner's ("CE") orthopedic evaluation of Plaintiff, which found her dorsal spine, shoulders, elbows, wrists, hands, lumbosacral spine, hips, knees, ankles, and feet ranges of motions were "grossly normal." AR 1238–39. The examination also revealed Plaintiff's posture was normal except for left and right-side bending. AR 1238.

The medical records cited in the ALJ's opinion constitute substantial evidence supporting the rejection of Saluta's opinions. *Batson*, 359 F.3d at 1195 (citations omitted) (An ALJ may discredit a medical opinion that is "unsupported by the record as a whole."); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding an ALJ's rejection of a physician's opinion that was "inconsistent with the medical records" and "did not mesh with [the claimant's] objective data or history"). The Court, therefore, finds the ALJ did not err by rejecting Saluta's and Drs. Mitchell and Yees' opinions.[3]

### B. Mental Impairments

The ALJ found Plaintiff had a "mental impairment of depressive disorder and anxiety disorder" that caused "no more than 'mild' limitation" in "interacting with others" and "concentrating, persisting, or maintaining pace." AR 18–19. Plaintiff, however, testified during the hearing that she has "always been treated" for depression, "it didn't

---

[3]     Because the Court finds this reason valid and supported by substantial evidence, any error as to the remaining reasons (inconsistent with daily activities and based on Plaintiff's subjective complaints) would, therefore, be harmless. *See Monta v. Saul*, 776 F. App'x 473, 474 (9th Cir. 2019) (holding an ALJ's erroneous reason for rejecting a medical opinion was harmless when other reasons were valid and supported by substantial evidence).

In addition, although the ALJ found Drs. Mitchell and Yee's opinions "not persuasive as independent medical opinions," he "nonetheless . . . substantively considered the limitations assessed by [Saluta] and endorsed by Drs. Mitchell and Yee." AR 24. Plaintiff's contention that "[t]he ALJ's failure to consider their independent support for the [rejection] is legal error," Dkt. No. 17 at 16, therefore, ignores the ALJ's "substantive[ ] consideration." AR 24.

affect [her] ability to do [her past work]," and the "main issue here for disability is really [her] physical conditions." AR 75. The ALJ did not include Plaintiff's mental limitations in Plaintiff's RFC. AR 20.

Plaintiff argues this exclusion was "harmful error because the ALJ concluded at Step Four that Plaintiff could return to past work," which required "public contact." Dkt. No. 17 at 17. Defendant responds the "ALJ explicitly . . . explained why he concluded [Plaintiff's mild mental limitations] did not translate into functional limitations." Dkt. No. 18 at 13.

An ALJ must consider the limiting effect of all impairments, including non-severe ones, in assessing a claimant's RFC. 20 C.F.R. § 404.1545(a)(2) ("[The SSA] will consider all of [a claimant's] medically determinable impairments of which [the SSA] [is] aware, including [a claimant's] medically determinable impairments that are not 'severe' . . . when [the SSA] assess[es] [a claimant's] residual functional capacity."); *see also Hutton v. Astrue*, 491 F.App'x 850 (9th Cir. 2012) ("Regardless of [a mental limitation's] severity . . . the ALJ was still required to consider [the plaintiff's mental limitation] when he determined [the plaintiff's] RFC."). However, "an ALJ need not include [mild mental limitations] in the RFC if they do not cause more than a minimal limitation on a claimant's ability to work." *Jones v. Berryhill*, No. 17-cv-1138-AS, 2018 WL 3956479, at *2 (C.D. Cal. Aug. 15, 2018). That is the case here, because nothing in the record establishes Plaintiff's mental impairments have any effect on her ability to work. *See e.g.* AR 75 (Plaintiff's depression did not affect her ability to perform past work.) Any error in failing to include mental limitations in the RFC, therefore, is harmless. *See Tommasetti*, 533 F.3d at 1038 ("The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (citations and internal quotation marks omitted); *Tonya Kay G. v. Comm'r of Soc. Sec.*, No. 21-cv-00179-DKG, 2022 WL 3567090, at *7 (D. Idaho Aug. 17, 2022) ("Given the absence of evidence that Petitioner's mild mental impairments limited Petitioner's ability to perform any work-related activities, the ALJ was not required

to include additional mental limitations in his RFC assessment or hypothetical to the [vocational expert].").

### C. Plaintiff's Testimony

Plaintiff's final argument is the ALJ "failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints." Dkt. No. 17 at 18. The ALJ's analysis, however, met the applicable legal standards.

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Id.* (internal quotation omitted); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

In her May 29, 2018 Function Report, Plaintiff reported:

- My conditions affect my ability to lift, squat, bend, stand, reach, walk, sit, kneel, stair climb, concentrate, and use my hands.

- "I can't lift my 2-year-old niece."

- I am unable to "stand longer than one hour or sit more than 45 minutes without difficulty due to my back pain and sciatica."

- "Lifting aggravates my back pain – 20 pounds."

- I cannot sleep throughout the night because I "cannot get comfortable."

- "[D]aily, I elevate both legs to help reduce pain along with stretching exercises, [and] take medications that make me lethargic."

9

- "[P]rolonged use of my hands hurt[s] and I need to rest them [and] use my splint and compression gloves." I had to "take breaks writing [this Function Report] due to hand pain-arthritis."

- I can do laundry, dust the house, sweep the kitchen, drive and ride in a car, shop in stores, and handle money.

- I can walk 10–15 minutes before needing a rest.

- "Some days the pain makes me cry . . . . I feel like it takes my body extra time to get everything moving."

- I "tried other measures to manage my pain" including acupuncture, therapy, and massages, but the pain persists.

AR 353–61.

At the September 12, 2019 hearing, Plaintiff testified:

- I am "still able to drive a car."

- My "main source of [pain]" is "[m]y SI and lumbar," but surgery is "not really recommended."

- I have problems with both hands, "but predominantly in the right."

- I can walk "[a]bout 15 minutes" without having to stop;

- "I'm in pain 24/7."

- "The coldness" makes the arthritis in my hands stiff and sore.

- "There's edema in the joints. . . . [T]hey're painful. I don't feel like I have the strength . . . to open up a . . . can, just that motion . . . [i]t's hard."

- "Definitely more increased pain" when using my hands "too much."

- I am "able to manipulate the controls on the cell phone," except "with my right thumb."

- "[W]ith proper support [I can sit], probably 20 minutes. . . . I had to stand up probably three times while I waited [in the lobby for the hearing]."

- "[T]he pain just kind of exacerbates my overall mental health."

- I do not sleep okay at night: "[i]t's really hard to get in a comfortable position. . . . And then the hands, they hurt. Sometimes they'll wake me up." I have "[c]ompression gloves."

- I have to place a heating pad "[o]n my lower back . . . [p]robably daily" to help control my symptoms.

- As the day goes on, my lower back "just gets achier. . . . And the mornings are tough."

- If I go to the grocery store, I could lift "two loaves of bread, but that's about it."

- "[S]tatic standing . . . will increase the sciatica," which makes it painful to be on my feet.

AR 70–90.

The ALJ found Plaintiff suffered from medically determinable impairments that "could reasonably be expected to cause the alleged symptoms." AR 21; *accord Vasquez*, 572 F.3d at 591 (finding ALJ "satisfied the first prong of the ALJ's inquiry regarding the credibility of [plaintiff's] complaints" where the "ALJ acknowledged that [plaintiff's] injuries could reasonably be expected to produce *some* of the pain and other symptoms alleged") (internal quotation marks omitted).

The ALJ found Plaintiff's statements not fully credible; however, because her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with . . . the medical evidence and other evidence in the record . . . ." AR 21. The ALJ found Plaintiff's "allegations of debilitating symptoms" were inconsistent with: (1) physical examinations showing "benign and unremarkable findings"; and (2) Plaintiff's daily activities. AR 26.

The ALJ's reasoning is clear and convincing and supported by substantial evidence. In evaluating Plaintiff's complaints of back and hand pain and restricted movement, the ALJ referenced contrary findings from Plaintiff's Orthopedic Consultative Examination. *Id.*; *see also* AR 1238, 1240 (Orthopedic Consultative Examiner's observations that Plaintiff's dorsal spine, shoulders, elbows, writs, hands, hips, knees, ankles, and feet were all "grossly normal" with only "mild limitation of her right lateral bend and lateral bends in the cervical spine."). The ALJ, therefore, properly considered the "benign and

21-cv-00227-DEB

unremarkable findings" from Plaintiff's physical examination (AR 26) to discount Plaintiff's subjective symptom testimony. *Carmickle v. Commr, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

The ALJ also rejected Plaintiff's subjective symptom testimony because it was inconsistent with her activities of daily living. AR 26. The ALJ noted that, despite Plaintiff's claim she was too physically impaired to work, Plaintiff reported she is capable of "operating her own motor vehicle for transportation, handling her own personal care . . . without difficulty, shopping in stores, performing some household chores, and spending time with others." *Id*.   Such inconsistencies with activities of daily living constitute a proper basis to reject Plaintiff's subjective symptom testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

In sum, the ALJ provided clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective pain testimony. There is no error.

## VI.   CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment (Dkt. No. 17) and GRANTS Defendant's Motion for Summary Judgment (Dkt. No. 18). The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:  September 1, 2022

_____
Honorable Daniel E. Butcher
United States Magistrate Judge

21-cv-00227-DEB